UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLENN LEFORT                                      CIVIL ACTION

VERSUS                                            NO: 14-672

LAFOURCHE PARISH FIRE                             SECTION: R
PROTECTION DISTRICT #3, ET AL

**ORDER AND REASONS**

Defendants Lafourche Parish Fire Protection District #3 ("LPFD"), Freddy Guidry, Jr., Gene Griffin, Morris Guidry, and Dean Guidry move to dismiss the following claims asserted in plaintiff Glenn Lefort's complaint: (1) his claims against the individual defendants under the Americans with Disabilities Act ("ADA"), (2) his claims against all defendants under Louisiana's disability discrimination statute, La. R.S. 23:323, and (3) his claims against all defendants under the Louisiana whistleblower law, La. R.S. 23:967(a).[1] Individuals cannot be held liable under the ADA, and plaintiff's state law claims are prescribed. Accordingly the Court GRANTS the motion.

**I.   BACKGROUND**

Plaintiff was hired as a mechanic by the LPFD on March 18, 2003. At the time, he was essentially deaf in his left ear.[2] On March 28, 2007, plaintiff sustained injuries in a work site

---

[1] R. Doc. 8; R. Doc. 8-1.

[2] The facts are taken from plaintiff's complaint. R. Doc. 1.

accident, resulting in a 48.75% impairment of hearing in his right ear. He returned to work on a light duty basis on July 23, 2007, and he alleges that he was cleared to return to full work duties with no restrictions on August 21, 2007.

Plaintiff alleges that on February 1, 2008, he received a letter from Freddy Guidry, Jr., Fire Chief and Administrator of LPFD, notifying him that a pre-disciplinary hearing had been scheduled for February 7, 2008 to discuss potential disciplinary action against plaintiff for three cited reasons: unwillingness or failure to perform duties of his position in a timely manner, conduct of a discourteous or wantonly offensive nature toward officers and employees, and insubordination. Plaintiff states that no further action was taken at that time.

According to plaintiff, he was notified on February 19, 2008 that he would be the subject of a disciplinary hearing on February 26, 2008. Plaintiff alleges that after his attorney requested detailed information regarding the complaints against him, the attorney was notified that the hearing had been postponed. Plaintiff further alleges that a special board meeting was held on April 3, 2008 to address the complaints against him. According to plaintiff, the Board of the LPFD moved to place a private admonition letter in his file, which would be removed after 180 days if the Board received no further complaints against plaintiff.

Plaintiff alleges that he twice requested audiotapes of a September 22, 2008 board meeting after learning that the discussion of "personnel matters" was listed as an item on the agenda. He also requested that the admonition letter be removed from his file. According to plaintiff, Lafourche Parish District Attorney Camille A. Morvant sent a letter to the LPFD Board Chairman Lawrence Mounic on June 15, 2009, indicating that plaintiff's public records request had not been fulfilled, in violation of La. R.S. 44:31 et seq. Plaintiff alleges that the Board complied with the request on August 18, 2009. He further alleges that a second public records request, made on September 15, 2009, was not fulfilled until January 16, 2010.

Plaintiff alleges that on September 7, 2010, Chief Guidry met with Michael Sidemann, a Forensic and Industrial Audiologist, and Carla Seyler, a licensed rehabilitation counselor, regarding plaintiff's ability to fulfill the duties of Master Mechanic. He alleges that Chief Guidry, without proper warning to plaintiff or others present, drove a fire truck into the station shop, revving the engine, activating the sirens, and blowing the air horns while Seidemann and Seyler were observing the workplace environment. Plaintiff alleges that typically, the shop is a controlled environment in which the loudest noises come from air-driven tools.

Seyler issued a report on September 9, 2010, stating that plaintiff was not capable of safely performing a job at the fire district. She opined that it was not feasible for plaintiff to perform any other job at the fire district and that there was no reasonable accommodation that would allow plaintiff to work safely while performing the essential job tasks.

Plaintiff's last day of work with the LPFD was October 27, 2010. He alleges that he received a Separation Notice alleging disqualification due to medical limitations on November 11, 2010. After declaring his intent to appeal to the Civil Service Board, plaintiff alleges that he was reinstated and placed on paid administrative leave on December 9, 2010. On February 23, 2011, Chief Guidry allegedly notified plaintiff of another pre-disciplinary hearing to be held on March 1, 2011 in order to discuss plaintiff's medical condition. Plaintiff alleges that his attorney requested that the hearing be rescheduled and that the Notice be reissued to reflect that the subject matter of the hearing was a medical rather than a disciplinary issue. Following the latter request, Chief Guidry allegedly postponed the hearing until further notice.

Plaintiff was placed on paid sick leave on March 17, 2011 for a period of 52 weeks, the maximum amount of time allowed under La. R.S. 33:1995. Plaintiff alleges that on May 7, 2012, he received a Separation Notice terminating his employment with the

LPFD. At a special meeting, board members Dean Guidry, Morris Guidry, and Gene Griffin allegedly voted not to reinstate plaintiff for his own protection and the protection of other district employees due to plaintiff's hearing impairment.

On August 8, 2012, plaintiff filed an Equal Employment Opportunity Commission ("EEOC") questionnaire, alleging wrongful termination due to his disability. Following a request from the plaintiff, the EEOC issued a Right to Sue Letter on December 16, 2013. Plaintiff filed this suit on March 25, 2014. Count One names as defendants the LPFD; Freddy Guidry, Jr., in both his individual and official capacities; and Dean Guidry, Morris Guidry, and Gene Griffin in their official capacities, alleging wrongful termination due to disability under the ADA. Count Two does not identify particular defendants but alleges disability discrimination in violation of La. R.S. 23:323. Count Three alleges that plaintiff suffered reprisal in the form of termination as a result of his history of advising the LPFD and the Lafourche Parish District Attorney of the LPFD's alleged violations of state law.

II.   **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

**III. DISCUSSION**

    *A.    Plaintiff's ADA Claims*

Defendants move to dismiss plaintiff's ADA claims against the individual defendants. They argue that individuals cannot be held liable under the ADA in either their individual or official capacities.

The ADA prohibits discriminatory conduct by a "covered entity," 42 U.S.C. § 12112(a), which is defined to include employers, employment agencies, labor organizations, and joint labor-management committees, *id.* § 12111(2). An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person, . . ." *Id.* § 12111(5)(A). This definition precisely mirrors the definition of an employer under Title VII. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.*, 655 F.3d 43, 51 (1st Cir. 2011) (citing 42 U.S.C. § 2000e(b)).

The Fifth Circuit has held consistently that there is no individual liability for employees under Title VII. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999)). "While Title VII's definition of the term employer includes "any agent" of an employer, Congress's purpose was merely to import *respondeat superior* liability into Title VII." *Id.* (citing *Indest*, 164 F.3d at 262)). Thus, an employee or supervisor faces

7

liability solely in his official capacity. *See Dixon v. Primary Health Servs. Ctr.*, CIV.A. No.10-1490, 2011 WL 1326841, at *2 (W.D. La. Mar. 3, 2011) (citing *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) ("Only when a public official is working in an official capacity can that official be said to be an "agent" of the government."). Because an official-capacity suit against a supervisor or other individual is actually a suit against the employing corporation, *Indest*, 164 F.3d at 262, a plaintiff may not maintain a Title VII action against both an employer and its agent in an official capacity, *id.; Smith*, 298 F.3d at 449. Accordingly, as long as the corporate employer is named as a defendant, individual employees cannot be liable to a plaintiff in either their personal or official capacities. *See Smith*, 298 F.3d at 449.

Recently, Judge Barbier concluded that the considerations precluding individual liability under Title VII apply with equal force in ADA actions. *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 703 (E.D. La. 2013). He explained:

> [T]he ADA definition of "employer" mirrors the Title VII definition. Although the Fifth Circuit has not directly addressed the question of whether an employer's agent or employee may be held liable under the ADA, this Court recently concluded that in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA. Thus, to the extent that

> Plaintiff is asserting claims against the Employee Defendants under the ADA, the Court finds that they are not legally cognizable.

*Id.* at 703 & n. 12 (citations omitted) (collecting cases).

The Court finds this reasoning persuasive. None of the individual plaintiffs may be held liable in their personal capacities under the ADA. And because plaintiff is suing the LPFD for discrimination under the ADA, he may not also maintain an action against Chief Guidry in his official capacity. The Court therefore dismisses plaintiff's ADA claims against all defendants except the LPFD.

### B. *Plaintiff's Claims under the Louisiana Discrimination Statute*

Plaintiff claims that defendants violated Louisiana's disability discrimination statute, which provides that "no otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment." La. R.S. 23:323. Defendants argue that this claim is prescribed.

Claims under La. R.S. 23:323 are governed by the prescriptive period set forth in La. R.S. 23:303(D). *See Nabors v. Metro. Life* Ins. Co., CIV.A. No. 12-827, 2012 WL 2457694, at *3 (W.D. La. May 30, 2012). It reads:

> Any cause of action provided in this Chapter shall be subject to a prescriptive period of one year. However, this one-year period shall be suspended during the pendency of any administrative review or investigation of the claim conducted by the federal Equal Employment Opportunity Commission or the Louisiana Commission on Human Rights. No suspension authorized pursuant to this Subsection of this

one-year prescriptive period shall last longer than six months.

La. R.S. 23:303(D). Consequently, the Louisiana disability discrimination statute "requires a plaintiff to file suit on his discrimination claim no later than eighteen months after the occurrence forming the basis for the claim. *Nabors*, 2012 WL 2457694, at *3.

Because plaintiff was terminated on May 7, 2012, the last possible date on which he could have filed suit was November 7, 2012. He did not do so until March 25, 2014, approximately 22.5 months after his termination.

Plaintiff points out that he timely filed an intake questionnaire with the EEOC. He further asserts that he requested a right to sue letter "following the lapse of 180 days," but he later states that he did not request the letter until November 6, 2013, which would be 456 days after the filing of the intake questionnaire. He received a right to sue letter on December 26, 2013 and filed suit three months later on March 25, 2014. Plaintiff argues that under the judicially-created doctrine of *contra non valentem*,[3] the prescriptive period should have been

---

[3] The doctrine's full name means "prescription does not run against a party unable to act," and it works to suspend a prescriptive period under four circumstances:

(1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;

suspended from the time he filed the intake questionnaire until he received the right to sue letter, as he "would not have had standing to file a suit prior to receiving authorization to do so."

This argument is without merit. The Fifth Circuit has made clear that the filing of an EEOC charge "does not toll, interrupt, or suspend prescription with regard to a plaintiff's state law claims." *Fussell v. Bellsouth Commc'ns, Inc.*, CIV.A. No. 96-1660, 1998 WL 12229, at *2 (E.D. La. Jan. 8, 1998) (citing *Taylor v. Bunge Corp.*, 775 F.2d 617 (5th Cir. 1985)); *see also Rivera v. Louisiana*, CIV.A. No. 04-3327, 2006 WL 901826, at *6 (E.D. La. Mar. 31, 2006) (collecting cases). To bring suit under La. R.S. 23:323, a plaintiff need only provide the defendant with thirty days notice of the allegations, whether through an EEOC charge or otherwise. *See Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 889 (W.D. La. 2003) (citing La. R.S. 23:303(C)). Plaintiff could have filed his action in state court and obtained

---

(2) Where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting;
(3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or

(4) Where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

*Wimberly v. Gatch*, 635 So. 2d 206, 211 (La. 1994).

a stay while pursuing his ADA remedies. *See Rivera*, 2006 WL 901826, at *6 (citing *Brouillette v. Transamerican Ref. Corp.*, CIV.A. No. 95-0584, 1995 WL 683869, at *5 (E.D. La. Nov. 11, 1995)). Because this was an available course of action, plaintiff was not prevented from acting, and the doctrine of *contra non valentem* does not apply. Accordingly, the Court dismisses plaintiff's claim under La. R.S. 23:323 as prescribed.

  C. *Plaintiff's Claims under the Louisiana Whistleblower Statute*

Plaintiff alleges that defendants violated the Louisiana Whistleblower Statute, La. R.S. 23:967, by terminating him in retaliation for his reports of the LPFD's violations of state law. Defendants argue that this claim also is prescribed.

Section 23:967 does not specify a prescriptive period. Consequently, it is subject to the general one-year prescriptive period for delictual actions set forth in La. C.C. art. 3492. *See Johnson v. Harrah's Entm't, Inc.*, CIV.A. No. 04-331, 2005 WL 3541139, at *5 (E.D. La. Nov. 16, 2005) (citing *Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2*, 790 So. 2d 725, 733 (La. Ct. App. 2001)). Nothing in the statute indicates that the prescriptive period should be suspended during the pendency of EEOC proceedings. *See Langley v. Pinkerton's Inc.*, 220 F. Supp. 2d 575, 581 (M.D. La. 2002); *see also Johnson*, 2005 WL 3541139, at *5. Because plaintiff was terminated on May 7, 2012, he had

until May 7, 2013 to bring this claim. His failure to file suit until March 25, 2014 renders his claim untimely.

Plaintiff argues that the continuing tort doctrine applies to his claim, because the LPFD allegedly has continued to violate state laws since his termination. Even if this were true, any violation of La. R.S. 23:967 would have resulted from plaintiff's termination in retaliation for his reports, not from the LPFD's alleged violations of other state laws. *Cf. Langley*, 220 F. Supp. 2d at 582 (holding that prescriptive period for plaintiff's whistleblower claim began to run on the date of her termination, as that was date on which the injury or damage was sustained). Because plaintiff was terminated on May 7, 2012, the Court dismisses this claim as prescribed.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss. The only claim remaining in this action is plaintiff's ADA claim against the LPFD.

New Orleans, Louisiana, this <u>8th</u> day of August, 2014.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE